**Richard J. Pocker**
**Nevada Bar No. 003568**
**Boies Schiller Flexner LLP**
**300 South Fourth Street**
**Suite 800**
**Las Vegas, NV 89101**
**Tel: (702) 382-7300**
**r.pocker@BSFLLP.com**

Counsel for Plaintiff SidePrize LLC d/b/a
PrizePicks

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| SIDEPRIZE LLC d/b/a PRIZEPICKS, | |
| *Plaintiff*, | |
| v. | Civil Action No. <u>2:25-cv-1513</u> |
| KENNETH WHITE, | **SidePrize LLC d/b/a PrizePicks'**<br>**Motion to Compel Compliance with**<br>**Subpoena** |
| *Respondent*. | |

Pursuant to Federal Rules of Civil Procedure 34, 37, and 45, SidePrize, LLC d/b/a PrizePicks ("PrizePicks") hereby moves this Court for an order compelling Non-Party Kenneth ("Kenny") White to produce information and documents responsive to a Subpoena to Produce Documents, Information, or Objects (the "Subpoena"). A true and correct copy of the Subpoena is attached hereto as **Exhibit A**. The Subpoena was personally served on Mr. White on May 9, 2025, setting forth a compliance deadline of June 9, 2025. Mr. White is represented by counsel. Despite making claims that he will comply with the subpoena, Mr. White and his counsel continue to ignore Mr. White's obligations and delay production of relevant documents in his possession.

## I.      Factual Background

### A.      The Underlying Litigation

This Motion to Compel arises in connection with a consolidated action currently pending in the United States District Court for the Northern District of Georgia, styled *Vetnos, LLC v. SidePrize LLC d/b/a PrizePicks*, Case Nos. 1:23-cv-02746; 1:24-cv-05568 (the "Underlying Litigation"). On June 20, 2023, Vetnos LLC ("Vetnos") filed its first complaint against PrizePicks (the "2023 Complaint"), alleging patent infringement of U.S. Patent Nos. 10,353,543 (the "543 Patent"), 11,157,147 (the "147 Patent"), and 11,579,754 (the "754 Patent"). Mr. White is a named inventor for each of those patents. Vetnos also asserted trade secret misappropriation claims, alleging it developed, employed, and protected certain trade secrets in connection with its daily fantasy sports game "HotRoster." The HotRoster game was launched in 2014 by Game Sports Network, Inc. ("GSN"), Vetnos' predecessor. Vetnos claims PrizePicks acquired the purported trade secrets from a previous GSN employee and used and continues to use the trade secrets. A true and correct copy of the 2023 Complaint is attached hereto as **Exhibit B**.

On December 4, 2024, Vetnos filed its second complaint against PrizePicks (the "2024 Complaint"), alleging patent infringement of U.S. Patent Nos. 11,465,057 (the "057 Patent"), 11,839,822 (the "822 Patent"), 11,886,688 (the "688 Patent"), 11,977,718 (the "718 Patent")[1], and 12,112,017 (the "017 Patent"). Mr. White is a named inventor of the 688 Patent. A true and correct copy of the 2024 Complaint is attached hereto as **Exhibit C**. On January 21, 2025, both cases were consolidated. PrizePicks denies all liability in the Underlying Litigation.

---

[1] On July 28, 2025, the Northern District of Georgia ruled the 718 Patent is directed to patent-ineligible subject matter and dismissed all claims on the 718 Patent in the Underlying Litigation with prejudice.

**B.      Mr. White's Connection to the Underlying Litigation**

Kenny White is directly connected to the Underlying Litigation by virtue of his key involvement at GSN and his contributions to the concepts described and claimed in the 543, 147, 754, and 688 Patents. He is a named inventor for each of these asserted patents. Mr. White joined GSN in or around 2014, and at that time, Mr. White was a leader in the sports betting industry. Mr. White served as the Vice President of Games & Probability for GSN. As the company's chief linemaker, he oversaw and directed the calculation of fantasy values that were associated with the matchups offered by GSN for its HotRoster game. Upon information and belief, Mr. White continued working with GSN until 2017.

Mr. White's extensive experience in the sports betting industry was critical to the methodologies claimed in these patents and to GSN's HotRoster game. Given Mr. White's unique industry knowledge and his significant responsibilities at GSN (a predecessor to the Plaintiff Vetnos in the Underlying Litigation), PrizePicks reasonably believes that the documents and information sought from Mr. White are highly relevant to its claims and defenses in the Underlying Litigation.

**C.      Mr. White's Refusal to Comply with the Subpoena**

On May 7, 2025, PrizePicks issued a subpoena to Mr. White, a Nevada resident, that was personally served on him two days later on May 9, 2025. *See* Proof of Service, attached hereto as **Exhibit D**. The Subpoena requested the production of documents and things relating to, among other things: (1) ownership rights relating to Vetnos' patents; (2) documents and communications relating to other listed patent inventors; (3) communications regarding the conceptions, development, or inventorship of Vetnos Patents; and (4) documents concerning the conception, development, and marketing of matchup or over/under games. *See* **Exhibit A** at 8-10.

Upon receiving the Subpoena, Mr. White informed PrizePicks' counsel that he retained Gary Schnitzer of Schnitzer Johnson & Watson, Chtd. to represent him in connection with the Subpoena. The following is an abbreviated timeline of the communications between counsel for PrizePicks and Mr. White:

- Mr. Alex Law, counsel for PrizePicks, emailed Mr. Schnitzer on May 15, 2025, asking to set up a call to discuss the Subpoena. *See* **Exhibit E** at 9.

- Mr. Schnitzer, Mr. Law, and Mr. Daniel Huynh, counsel for PrizePicks, had a conference call on May 19, 2025 to discuss the Subpoena. *See* Daniel Huynh Declaration ("Decl."), ¶ 6. Following the call, Mr. Schnitzer asked PrizePicks' counsel questions pertaining to the Subpoena requests regarding GSN's bankruptcy, which Mr. Law timely answered. **Exhibit E** at 3-6.

- After receiving no further correspondence from Mr. Schnitzer for 12 days, Mr. Law followed up again on the original date of compliance, June 9, 2025. *Id.* at 3. Mr. Law requested an update on Mr. White's search for documents and offered an extension if needed. *Id.*

- Mr. Schnitzer requested a one-week extension on the date of compliance through June 16, 2025, to which Mr. Law offered an *additional* two weeks, thereby extending the deadline to June 30, 2025. *Id.* at 2-3. In the same email, Mr. Law also asked to coordinate an in-person meeting with Mr. White and Mr. Schnitzer in Las Vegas, NV—where Mr. White resides. *Id.*

- Mr. White, Mr. Schnitzer, Mr. Huynh, and Mr. Law met in person in Las Vegas, NV on June 20, 2025. Decl., ¶ 7. During the meeting, Mr. White agreed to have a third-party discovery vender collect all responsive emails and information in his possession. *Id.* Mr. White and Mr. Schnitzer indicated they would like to take a first-pass review of all collected data to screen for potentially confidential and/or privileged information before releasing the data to PrizePicks' or Vetnos' counsel. *Id.* PrizePicks' counsel agreed, so long as any such review was conducted in a timely manner. *Id.*

- On July 1, 2025, a representative from third-party vendor Gulfstream Legal Group LLC went to Mr. White's office and collected the data from Mr. White. **Exhibit F** at 16-17.

- The data collected from Mr. White was made available for Mr. White and Mr. Schnitzer to review on July 8, 2025. *Id.* at 1-3.

- On July 22, 2025, Mr. Schnitzer, Mr. Huynh, and Mr. Law had a conference call to discuss the procedure and estimated timeline for Mr. White's screening review of his data. Decl., ¶ 9. PrizePicks' counsel again reiterated they were amenable to allowing

Mr. White to conduct a *timely* screening review of the documents before making the data available to PrizePicks' or Vetnos' counsel to review. *Id.*

- On July 31, 2025, Mr. Schnitzer stated that Mr. White was "in the middle of several projects. His goal is to begin and complete review by the end of next week" (*i.e.*, by August 8, 2025). **Exhibit G** at 1. Mr. Schnitzer also stated Mr. White was unable to commit to a firm deposition date. *Id.*

- On August 11, 2025—three days after Mr. White's new August 8, 2025 expected date of compliance—Mr. Huynh emailed Mr. Schnitzer to inquire about the status of the subpoena document production. **Exhibit H** at 3-4. Mr. Schnitzer initially did not respond.

- Mr. Law followed up on August 14, 2025. *Id.* at 3. Mr. Schnitzer replied and, again, claimed that Mr. White has been unable to review the documents due to his workload, but he hopes to begin his review the week of August 18, 2025. *Id.* Mr. Law raised concern that Mr. Schnitzer and Mr. White have repeatedly moved the compliance deadline and then failed to meet it. *Id.* at 2-3. Mr. Law insisted that they commit to a firm deadline to complete review, as well as a deposition date, and requested Mr. Schnitzer's availability for a meet and confer in the next few days. *Id.* Mr. Schnitzer refused to commit to any dates or engage in a meet and confer, despite the fact that *over two months* have passed since Mr. White's original compliance deadline. *Id.* at 1-2. When Mr. Huynh directly emailed Mr. Schnitzer to see if the parties could reach an agreeable way forward, Mr. Schnitzer ignored his request. *Id.* at 1.

As set forth above, PrizePicks' counsel has conferred with Mr. Schnitzer on numerous occasions, both over the phone and in-person, to discuss the Subpoena and Mr. White's compliance therewith. Despite the endless extensions and efforts to work with Mr. White, Mr. White has not given PrizePicks any indication that he will start, let alone complete, his review of materials. Mr. Schnitzer has also ignored and/or outright declined PrizePicks' recent requests for a good faith meet and conferral conference to discuss compliance and resolution of the discovery issues. After exhausting all reasonable avenues to resolve this issue with Mr. White and his counsel, PrizePicks now files this present Motion to Compel, requesting that this Court enter an order compelling Mr. White to comply with the Subpoena by either (1) completing his screener review by August 30, 2025, or (2) immediately granting PrizePicks and Vetnos permission to review all data collected from Mr. White.

## II.    Jurisdiction

Pursuant to Federal Rules of Civil Procedure 37(a)(2), when a party moves to compel discovery on a nonparty, the "motion for an order to a nonparty must be made in the court where the discovery is or will be taken." If the party seeking discovery or if the subpoenaed party prefers to have the dispute resolved by the court where the underlying action is pending, that person must seek such relief from "the court where compliance is required." Fed. R. Civ. P. 45(f). And the court of compliance "is tethered to the location of the subpoenaed person." *In re J&J Investment Litigation*, Case No. 2:22-cv-00529-GMN-NJK, 2023 WL 3121922, at *1 (D. Nev. Apr. 26, 2023). In short, "all of the pertinent rules require that nonparty discovery disputes must be filed in the first instance in the court where compliance is required." *Id.*

Here, PrizePicks seeks compliance with the Subpoena served on nonparty Kenny White, who lives and resides in Las Vegas, Nevada. The subpoena requires Mr. White to produce relevant documents to Boies Schiller Flexner LLP, 300 S. Fourth Street, Suite 800, Las Vegas, Nevada 89101, which is within 100 miles of Mr. White's address. *See* **Exhibit A** at 1. As both the individual and place of production are located in Las Vegas, Nevada, the District Court for Nevada is considered the place of compliance for this discovery. *See* Fed. R. Civ. P. 35(a)(2) & 45(c)(2). Therefore, this Court has jurisdiction to hear and decide this discovery dispute.

## III.    Legal Standard

The district court "has wide discretion in controlling discovery" to ensure "just, speedy, and inexpensive" determinations in every proceeding. *McCart-Pollak v. Saevitzon*, No. 2:20-cv-01624-GMN-MDC, 2024 WL 4279339, at *1 (D. Nev. Sept. 24, 2024). The Federal Rules of Civil Procedure allows parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). For the purposes of discovery, relevant information is anything "relevant to the subject matter

involved in the pending action or reasonably calculated to lead to the discovery of admissible evidence." *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995) (internal quotations omitted). Ordinarily, courts apply a broad interpretation of relevancy for purposes of discovery. *V5 Technologies v. Switch, Ltd.*, 334 F.R.D. 306, 309 (D. Nev. 2019) ("Relevancy for the purposes of discovery is defined broadly.").

If a party resists discovery, the requesting party may file a motion to compel. Fed. R. Civ. P. 37(a)(1); *see also DelVecchia v. Frontier Airlines, Inc.*, No. 2:19-cv-01322-KJD-DJA, 2022 WL 3143322, at *5 (D. Nev. Aug. 5, 2022). This extends to discovery upon nonparties. *See* Fed. R. Civ. P. 34(c) & 45(c)(2). The federal rules explicitly allow and permit a party to seek the production of documents from a nonparty. *See* Fed. R. Civ. P. 34(c) & 45(c)(2). If the nonparty resists discovery, "a nonparty may be judicially compelled to produce documents pursuant to the dictates of Rule 45 of the Federal Rules of Civil Procedure." *J&J Investment Litigation*, 2023 WL 3121922, at *1.

The motion to compel must include a threshold showing of relevancy, which is defined broadly. *Id.*; *see also Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 438–39 (9th Cir. 1992) ("Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery."). However, "when the discovery sought appears relevant on its face, '[t]he party resisting discovery bears the burden of establishing lack of relevance by demonstrating that the requested discovery … does not come within the broad scope of relevance." *Krause v. Nevada Mut. Ins. Co.*, 2014 WL 117572, at *3 (D. Nev. Jan. 10, 2014).

Although mere disbelief that a party does not have responsive documents is not enough to grant a motion to compel, the party seeking discovery may present reasoning or evidence to convince the court that information is being withheld. *See Bass Underwriters, Inc v. Kono*, 2024

WL 5010129, at *2 (D. Nev. Apr. 17, 2024) (denying a motion to compel because the party could

produce no reason or evidence to suggest that the subpoenaed party had relevant information).

## IV.    Argument

Here, the discovery PrizePicks seeks from Mr. White is relevant on its face, as the

requested documents pertain to Vetnos' purported intellectual property, which is central to

Vetnos' patent and trade secret claims in the Underlying Litigation. PrizePicks requests such

documents and information so it can adequately prepare its defense.

Any documents or information Mr. White has are critical to PrizePicks' case, considering

Vetnos has failed to produce comparable documents despite multiple requests. Specifically,

PrizePicks sent discovery requests to Vetnos, seeking among other things production of

documents that relate to the operation, creation, and underlying source code of the HotRoster

game. Vetnos was also required under N.D. Ga. Local Patent Rule 4.1(c)(1)-(2) to produce

documents sufficient to show the operation or composition of the HotRoster game. Vetnos has

failed to produce such documents, claiming the HotRoster source code is completely lost.

PrizePicks, therefore, is left to seek these documents from other sources. Mr. White, as co-

inventor of four of seven asserted patents and as GSN's previous Vice President of Games &

Probability, is believed to have information relevant to Vetnos' intellectual property and the

HotRoster game. Upon information and belief, Mr. White's knowledge and experience were

central to the information and concepts disclosed in at least the 543, 147, 754, and 688 Patents and

subsequently implemented in the HotRoster game. As set forth above, the documents that

PrizePicks seeks from Mr. White, therefore, are precisely relevant to the claims and defenses at

issue in the Underlying Litigation.

As all of the discovery requests sent to Mr. White explicitly relate to Vetnos' purported

intellectual property, which is the basis of Vetnos' claims in the Underlying Litigation, the

requests are relevant and reasonably fall within the scope of discovery. This Court, therefore, should compel compliance with the subpoena.

Further, PrizePicks has more than assumptions or belief that Mr. White possesses relevant materials because Mr. White himself has made representations that he has information responsive to the subpoena. Mr. White identified relevant information in his possession, which consists of emails and information from his time at GSN, including data regarding the HotRoster game. Decl., ¶ 7. Mr. White agreed to let a third-party discovery vendor collect the information if he could review it for confidential and/or privileged information before producing the responsive materials. *Id.* Mr. White, however, continues to delay his obligation to review these materials, despite making multiple representations that he will review and produce responsive materials. As Mr. White continues to ignore his obligation to produce the materials responsive to the subpoena, PrizePicks respectfully requests that this Court compel Mr. White to either (1) complete his screener review by August 30, 2025, or (2) immediately grant PrizePicks and Vetnos permission to review all data collected from his possession.

**V.     Conclusion**

For the reasons stated above, PrizePicks respectfully requests that the Court compel Mr. White to fully comply with the Subpoena. The documents and information sought though the Subpoena is plainly relevant to the issues in the Underlying Litigation. Mr. White has failed to submit any objection to the Subpoena and has repeatedly delayed compliance with the Subpoena, despite multiple voluntary extensions from PrizePicks. As such, PrizePicks respectfully request that this Court grant its Motion to Compel.

Respectfully submitted, this 15th day of August, 2025.

By: /s/ Richard J. Pocker
    Richard J. Pocker
    **BOIES SCHILLER FLEXNER LLP**
    300 South Fourth Street
    Suite 800
    Las Vegas, NV 89101
    Tel: (702) 382-7300
    rpocker@bsfllp.com